**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
Case No. 07-22384-CIV-MOORE

LEONARDO FRANQUI,

      Petitioner,

v.

STATE OF FLORIDA,

      Respondent.

_____/

**CLOSED**
**CIVIL**
**CASE**

## ORDER DENYING PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

THIS CAUSE came before the Court upon Petitioner's Petition for Writ of Habeas Corpus by a Person in State Custody (dkt # 1).

UPON CONSIDERATION of the Motion and being otherwise fully advised in the premises, the Court enters the following order:

### I.    BACKGROUND

On February 14, 1992, Defendant Leonardo Franqui ("Franqui" or "Petitioner") was charged with the following crimes: first-degree murder of a law enforcement officer, armed robbery, aggravated assault, two counts of grand theft, and two counts of burglary in connection with a bank robbery. See Franqui v. State, 804 So.2d 1185, 1189 (Fla. 2001).[1] In May 1994, Franqui was tried, along with codefendants Ricardo Gonzalez and Pablo San Martin, before a jury for these violations.[2] Id.

---

[1] The facts and procedural history of the case are largely undisputed, as recounted by the Florida Supreme Court both in Franqui's direct appeal and motion to vacate.

[2] In total, the following five individuals were charged with first-degree murder of law enforcement officer Steven Bauer: Leonardo Franqui, Pablo San Martin, Ricardo Gonzalez,

The State of Florida produced evidence that on January 3, 1992, four men robbed the North Miami Branch of Kislak National Bank. Id. In carrying out the robbery, the men traveled in two previously stolen Chevrolet Caprice automobiles and absconded with one cash box. Id. During the robbery, Police Officer Steven Bauer was shot multiple times, but specifically died from a shot to the neck. Id. at 1189-90. On January 18, 1992, police questioned codefendant Gonzalez, who eventually consented to a search of his apartment. Id. at 1189. The police found $1,200.00 in cash during their search and determined the cash was Kislak National Bank robbery proceeds. Id. Gonzalez told the police that Franqui was the mastermind behind the robbery, was responsible for procuring the two stolen cars and some of the weapons, and had chosen the robbery team and location. Id. Further, Gonzalez claimed that Franqui had shot Officer Steven Bauer multiple times and that Franqui had demanded that Bauer not move before Franqui shot him. Id.

Also on January 18, 1992, police brought Franqui in for questioning regarding the robbery as well as his suspected involvement in a murder, which took place in Hialeah approximately two months before the Kislak robbery. Id. at 1190; Franqui v. State of Florida, 699 So.2d 1312, 1315 (Fla. 1997). Franqui was initially subjected to some pre-interview questions and denied any involvement in the Kislak robbery. Id. at 1190. The police, however, explained to Franqui that his codefendants, who were also in custody, had provided details regarding the Kislak robbery that implicated Franqui. Id. Upon being confronted with this damning information, Franqui admitted that he was involved in the crime. Id. Franqui, though, stated that Fernando Fernandez masterminded the robbery along with an unidentified black male.

---

Fernando Fernandez, and Pablo Abreu.

2

Id. Franqui claimed that Fernandez, San Martin, and Abreu stole the Chevrolet Caprices that were later utilized in the robbery. Id. Franqui confessed that he, along with Gonzalez, were armed during the robbery, but maintained that it was Gonzalez that told the victim to freeze and that it was Gonzalez who fired the fatal shot. Id. Ballistics evidence revealed that it was Gonzalez's shot that killed Officer Bauer, while Franqui's shot hit Officer Bauer's leg. For his role in the Kislak robbery, Franqui was convicted on all counts, which included first-degree murder of a law enforcement officer, armed robbery, aggravated assault, two counts of grand theft, and two counts of burglary in connection with a bank robbery. Id. The jury recommended the death sentence in a vote of 9-3 and the trial court agreed with the jury's majority decision and imposed a sentence of death.

## II.    PROCEDURAL HISTORY

Following Franqui's May 1994 jury trial, Franqui filed a direct appeal. Id. On appeal, Franqui raised the following five claims:

> (1) that the trial court erred in denying Franqui's peremptory challengers of jurors Diaz and Andani; (2) that the trial court abused its discretion in granting the State's peremptory challenge of juror Pascual because the State's reasons for striking this juror were not gender neutral; (3) that the trial court erred in denying Franqui's motion for severance based upon the introduction of non-testifying codefendant Gonzalez's confession at their joint trial; (4) that the trial court erred in admitting the prosecutor's comments to the jury concerning the victim's personality and character; and (5) that the trial court erred in sentencing Franqui to death.

Franqui v. State, 699 So.2d 1332, 1334 (Fla. 1997). The Florida Supreme Court affirmed Franqui's convictions, but vacated Franqui's sentence "on the basis that the trial court erred in admitting the confession of codefendant Gonzalez against Franqui in their joint trial." See Franqui, 804 So.2d at 1190. The Florida Supreme Court found the admission of Gonzalez's

3

confession to be harmless error beyond a reasonable doubt as it pertained to guilt because there was overwhelming, non-tainted evidence of Franqui's guilt. Id. The Florida Supreme Court vacated the sentence, specifically, because Gonzalez's confession alleged that Franqui had masterminded the robbery, which the Florida Supreme Court determined did not affect a finding of guilt, but might have affected the determination of punishment. The Florida Supreme Court remanded the case with instructions to engage in a new penalty phase proceeding. See Franqui, 804 So.2d, at 1190. The new penalty phase took place in August 1998 and Franqui presented evidence to support a claim for mitigation. Id. This second penalty phase jury also recommended a sentence of death by a vote of 10-2. Id. Once again, the trial court heeded the jury's majority recommendation and imposed a sentence of death.

Following this second imposition of the death penalty, Franqui again appealed to the Florida Supreme Court and alleged six errors:

> (1) the trial court erred in excusing two potential jurors for cause; (2) the trial court erred in instructing and permitting the jury to be instructed by the State that it was required to recommend a death sentence if the aggravating circumstances outweighed the mitigating circumstances; (3) the trial court erred in overruling defense objections to prosecutorial closing; (4) the trial court erred in refusing to instruct the jury that it could consider the life sentences given to codefendants San Martin and Abreu as a mitigating factor; (5) the trial court failed to find and weigh all mitigating circumstances; and (6) the death penalty is disproportionate in this case.

Id. at 1191. On October 18, 2001, after examining Franqui's six claims, the Florida Supreme Court affirmed his death sentence. Id. at 1199.

In April 2003, Franqui filed a Florida Rule of Criminal Procedure 3.851 petition for post-conviction relief in the trial court where he raised over fifteen claims for relief. Franqui raised the following post-conviction claims in the trial court.

4

(1) the procedure for the assignment of trial judges in Dade County criminal cases is inherently unfair, particularly in Franqui's case; (2) the circumstances surrounding Franqui's waiver of his right to testify show that the waiver was involuntary and unknowing; (3) the circumstances surrounding his confession make Franqui's statement unreliable, illegal, and inadmissible; (4) the trial court denied Franqui the right to obtain evidence from a material, relevant witness; (5) Franqui was denied due process when the second sentencing court allowed his statement to be admitted into evidence but failed to permit the defense to present evidence on the confession issues; and (6) trial counsel was ineffective for [a] making no effort to litigate the suppression of Franqui's statement despite ample and compelling evidence for suppression; [b] failing to pursue Franqui's right to obtain evidence from a material, relevant witness; [c] failing to present witnesses; [d] resentencing counsel failed to litigate Franqui's filed suppression motion apparently because both he and the judge mistakenly believed that the confession issue had already been litigated and lost in the Florida Supreme Court; [e] resentencing counsel failed to challenge the voluntariness of Franqui's confession to the jury; [f] resentencing counsel failed to challenge the constitutionality of Florida's death penalty scheme; [g] failing to file a motion to dismiss the charges against Franqui based on patent deficiencies in the indictment; [h] failing to present neutral reasons for exercising a peremptory challenge against panel member Diaz, resulting in that juror being seated; [i] failing to preserve patent trial court error in preventing a defense strike against prospective juror Andani; [j] failing to litigate Franqui's request for individual voir dire and motion to sequester; [k] failing to preserve patent trial court error in allowing the State to peremptory challenge prospective juror Pascual; [l] failing to object to the prosecutor's misstatement of the law in closing; and [m] appellate counsel's failure to raise the issue of prosecutorial misconduct.

Franqui v. State, 965 So.2d 22, 27 (Fla. 2007). The trial court denied Franqui's post-conviction relief on each of his claims. Id. Franqui appealed the trial court's denial of his post-conviction claims to the Florida Supreme Court by arguing eight instances of trial court error. Id. Franqui also filed a petition for writ of habeas corpus in the Florida Supreme Court. Id. at 28. The Florida Supreme Court addressed Franqui's post-conviction claims and his petition for habeas corpus in the same court order. The Florida Supreme Court denied Franqui's request for post-conviction relief by finding that Franqui's counsel, at all stages of the proceeding, were not ineffective. Id. at 28-33. The Court further found no error regarding the fact that the same trial

5

judge presided over both of Franqui's murder cases [Kislak robbery and Hialeah murder]. Id. at 34. Finally, the Florida Supreme Court rejected the remainder of Franqui's post-conviction claims for relief: improper use of investigatory subpoena, improper comments made by prosecutor, and the unconstitutionality of Florida's death penalty scheme. Id. at 34-36.

In its May 3, 2007 order, the Florida Supreme Court also rejected Franqui's petition for habeas corpus. Id. at 38. Franqui's petition for habeas corpus alleged that he received ineffective assistance of counsel because his counsel failed to challenge Franqui's confession, failed to challenge allegedly inappropriate prosecutorial comments made at trial, and failed to raise issues on appeal. Id. at 36-38. The Florida Supreme Court rejected these arguments and did not find Franqui's counsel ineffective. Therefore, the Supreme Court denied Franqui's requested relief for both his post-conviction appeal as well as his petition for habeas corpus. Following the Florida Supreme Court's complete denial, on September 12, 2007, Franqui filed this petition for writ of habeas corpus.

### III.   STANDARD OF REVIEW

#### A. Exhaustion and Procedural Bar

A petitioner seeking to challenge his state conviction in federal court must first "fairly present" his federal claim to the state court before bringing the same claim in federal court. See Picard v. Conner, 404 U.S. 270, 275 (1971). A federal claim is "fairly presented" if it is brought to the state court's attention that the prisoner's claim is based upon the U.S. Constitution. See Duncan v. Henry, 513 U.S. 364, 366 (1995). If the petitioner fails to "fairly present" his federal claim to the state court prior to initiating his federal action, the claim is unexhausted. Id. If an unexhausted claim would be barred if attempted to once again be presented in state court, a

federal court can apply the state rules and bar the claim, otherwise the exhaustion requirement would serve no purpose. Teague v. Lane, 489 U.S. 288, 297-99 (1991). Under Florida law, a petitioner is not permitted to file successive habeas corpus petitions that seek the same relief as an earlier petition if the successive petition is based upon circumstances that were known or should have been known when the previous petition was filed. See Johnson v. Singletary, 647 So.2d 106, 109 (Fla. 1994). If a petitioner's claim is procedurally barred by state law, the exhaustion requirement "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." See Gray v. Sutherland, 518 U.S. 152, 162-63 (1996) (internal citations omitted). For any defaulted claim, the petitioner bears the burden of proving cause and prejudice so as to receive federal habeas review.

### B. Federal Review of State Court Determinations

Under Title 28 U.S.C. § 2254, this Court presumes that all of the state courts' factual determinations are correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. See 28 U.S.C. § 2254 (e)(1) (1996). Further, § 2254 also requires that a reviewing court shall not grant:

> an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court . . . with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Id. In Williams v. Taylor, the Supreme Court examined the two grounds that permit the granting

7

of a writ of habeas corpus. 529 U.S. 362, 412-13 (2000).  The Supreme Court explained the

"contrary to" and "unreasonable" language as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this Court has
> on a set of materially indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

Id.  When the Supreme Court mandates that an unreasonable application of law to facts warrants

granting a writ of habeas corpus, the Court is referring to an objectively unreasonable standard.

Id. at 410.

Therefore, this Court reviews Franqui's petition for whether the state courts' actions

"were contrary to, or an unreasonable application of, clearly established federal law" or whether

the state courts engaged in an unreasonable factual finding.  See D. Resp. (dkt # 6) at 26-28.

This Court is empowered to review the state courts' decisions to reject Franqui's claims even if

the state court did not provide an explanation for its decision.  See Isaacs v. Head, 300 F.3d

1232, 1258-60 (2002).  Finally, should this Court determine that the state courts' determinations

do contain some error, this Court must decide whether the error alleged "had [a] substantial and

injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S.

619, 623 (1993); see also Grossman v. McDonough, 466 F.3d 1325, 1339 (11th Cir. 2006)

(stating "[i]n *Brecht*, the Supreme Court noted the differences between the *Kotteakos* harmless

error standard and the 'harmless beyond a reasonable doubt' standard, and determined that the

harder-to-establish *Kotteakos* formulation was more appropriate in the habeas context, which is

designed to afford relief only to those whom society has 'grievously wronged.'").  Under these

standards of review, this Court addresses each of Franqui's many claims for relief.

8

## IV.    DISCUSSION

### A. Claim 1: Confession Allegedly Obtained Unconstitutionally

Franqui first claims that his confession was involuntary and obtained in contravention of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the Constitution. He maintains that the confession should have been suppressed. Franqui alleges that his confession was obtained under the following circumstances: he was taken from his cell, where he was incarcerated on unrelated charges, and put in a "police office" where he was subject to questioning. See Pet. (dkt # 1) at 11. Allegedly, Franqui was questioned regarding both the Hialeah murder and the Kislak robbery by two separate interrogation teams. Id. According to Franqui, the questioning began at noon and lasted approximately twenty hours. Id. Investigators were able to obtain a confession from Franqui regarding the Kislak robbery, but Franqui maintains that the confession was involuntary and that he did not meaningfully waive his right to remain silent or to have counsel present. Id. Franqui also argues that his intelligence quotient of 60, along with mental illness, prevented him from knowingly, intelligently, and voluntarily waiving his rights. Id. Finally, Franqui asserts that the conditions under which he was questioned violated his constitutional protections. Id. These alleged conditions include: the "coercive atmosphere; the length of time of questioning; the changing of questioners; the failure to provide counsel, [and] the failure to record in any way, although means were readily available, the intense interrogation until was determined that the statement was one which they wished memorialized." Id.

Franqui's claim regarding the involuntary nature of his confession is denied on multiple grounds. First, Franqui's claim is unexhausted because he did not raise the denial of his motion to suppress in any of his appeals. Rather, Franqui only raised the issue of ineffective assistance

of counsel for his counsel's alleged failure to raise the issue of suppression on appeal. See App. L at 37-56 (specifically where Franqui states in his own brief "[t]he denial of suppression in this case was not raised on appeal"). The Supreme Court has held that a claim for ineffective assistance of counsel and an underlying claim are separate, independent claims that must both be preserved. See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). Further, this Court is not permitted to review a claim that was not previously reviewed by the state court and, therefore, properly exhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). Since Franqui's claim is unexhausted, this Court may not grant relief. See 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State."). However, § 2254(b)(2) permits a reviewing federal court to deny an application for a writ of habeas corpus on the merits, despite a petitioner's failure to exhaust the claim in state court.

Further, as Respondent aptly states, "[w]hen a claim has not been exhausted in the state courts but would be barred if it were presented there, a federal court may rely upon the applicable state rules and bar the claims, since exhaustion would be futile." See Resp. (dkt # 6) at 88; see also Tower v. Phillips, 7 Fed 206, 210 (11th Cir. 1993) (holding that if claims are not presented to state court then it is permissible for the federal court to apply state procedural default law and bar the claims). Here, this Court can apply Florida law, which states that claims that were not raised on direct appeal, but could have been, cannot be raised in a post conviction proceeding, and thus the claims are procedurally barred. See Patton v. State, 784 So.2d 380, 386 (Fla. 2000) ("The. . . issues which were or should have been raised on direct appeal and are therefore procedurally barred will not be addressed" and one of the issues that was or should have been

10

raised on direct appeal was "failing to suppress statements taken by law enforcement."); see also App. S. at 301 (This claim is procedurally barred, as a claim that should have been raised on direct appeal.").

Since this claim is procedurally barred, this court cannot examine Franqui's claim regarding his confession unless Franqui can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991) (emphasis added). Franqui's only explanation for the default is that his counsel was ineffective and inadequate. The Florida Supreme Court already addressed both trial and appellate counsel's effectiveness as it relates to the suppression issue. See Franqui v. State, 965 So.2d 22, 28-31, 36-38 (Fla. 2007). Given the Florida Supreme Court's prior determination that Franqui's counsel was not ineffective, in order for Franqui to demonstrate cause for the default and actual prejudice, the Florida Supreme Court's determination must have "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." See 28 U.S.C. § 2254(e)(1) (1996). The Florida Supreme Court's determination was not contrary to federal law established by the Supreme Court and is actually in line with the ineffective assistance of counsel Supreme Court precedent.

Under the Supreme Court's Strickland decision, ineffectiveness of counsel is only established if the defendant can prove that "counsel's performance was deficient. . .[,] [which] requires showing that counsel made errors so serious that counsel was not functioning as"

11

counsel guaranteed by the Sixth Amendment. . . and "that the deficient performance prejudiced the defense...[,][which] requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial." Strickland v. Washington, 466 U.S. 668, 687 (1984).

Employing this standard, the Florida Supreme Court found that Franqui's trial counsel, Cohen, was not ineffective for stipulating to the suppression issue, failing to present Dr. Toomer's opinion regarding Franqui's mental state, and failing to present expert testimony on involuntary confessions. The Florida Court found that Cohen chose not to re-challenge the suppression issue because it was identical to a suppression hearing held in the Hialeah case,[3] and that counsel's strategic choices are given deference and do not constitute ineffective assistance "if alternative courses have been considered and rejected." Franqui v. State, 965 So.2d 22, 28 (Fla. 2007). Further, the Florida Supreme Court found trial counsel's decision to not use evidence, presented by Dr. Toomer, of Franqui's alleged mental illness to be sound because trial counsel never observed any mental impairments in Franqui and Dr. Toomer's credibility and testimony had come into question during the Hialeah trial in front of the same judge. Id. at 29-30.[4] Finally, the Florida Supreme Court held that trial counsel's alleged failure to present testimony regarding the effect of police coercion could not possibly be error because expert

---

[3]Franqui's confessions in both the Hialeah murder and the Kislak robbery stemmed from the same interrogation, by the same officers, under the same circumstances. Further, the two suppression hearings involved identical parties and the same judge.

[4]Further, it was brought to light that Franqui understood his right to remain silent and right to an attorney. The voluntariness of his confession was not challenged based upon his low functioning mental state, but rather alleged coercion and violence. Trial counsel's choice not to provide Dr. Toomer's findings were not only strategic, but also appear sound given the jurisprudence regarding voluntariness of confessions which holds that the level of competence needed to stand trial is the same to waive one's rights. See Godinez v. Moran. 509 U.S. 389, 398 (1993).

testimony on this subject was still in its infancy. Id. at 31. The Florida Supreme Court opinion provides a wealth of analysis and support as to why trial counsel was not ineffective and does so under the Supreme Court's Strickland rubric. Id at 28-31. Therefore, the Florida Supreme Court's determination that Franqui's trial counsel was not ineffective stands because it was not contrary to, or an unreasonable application of, federal law and was not the result of an unreasonable determination of the facts in light of the evidence.

In addition, Franqui's allegation that appellate counsel was ineffective for not addressing the issue of suppression on appeal must also be denied. The Florida Supreme Court reasonably found that "[b]ased on the totality of the circumstances in the instant case, and the existence of competent, substantial evidence to support the trial court's rulings, we cannot conclude that appellate counsel was ineffective." Franqui v. State, 965 So.2d 22, 37 (Fla. 2007). The Florida Supreme Court anchored its finding on the fact that the trial court found Franqui's claims of abuse, coercion, and depravation unbelievable, and determined that Franqui had knowingly and voluntarily waived his rights. Id. at 36-37. The Florida Supreme Court determined, after its own review of the substantial evidence, that the trial court was correct in its ruling denying suppression and; therefore, appellate counsel cannot be found ineffective for failing to re-litigate the suppression issue. Id. Given the evidence presented at the trial court, which showed a lack of abuse, coercion, and depravation, including the credibility determinations regarding Franqui versus the questioning officers, the Florida Supreme Court did not unreasonably apply the Strickland ineffective assistance of counsel standard.[5] In addition, any claim that appellate

---

[5]Given the countervailing evidence that showed a lack of coercion and voluntary waiver of rights, the Florida Supreme Court properly found that counsel was proficient and any error in failing to litigate the suppression issue did not prejudice the defendant.

13

counsel was ineffective for failing to raise the issue of Franqui's mental health and its effect on the voluntariness of his confession is also denied because that issue was not preserved for appeal and appellate counsel cannot be held accountable for failing to raise an unappealable issue. See Groover v. Singletary, 656 So.2d 424, 425 (Fla. 1995).

Finally, Franqui's claim of ineffective assistance of trial and appellate counsel also fails because his underlying claims of involuntary waiver of rights, coercion, and improper length of interrogation are without merit. Again, the trial court found Franqui's testimony regarding his interrogation to be incredible and found the investigating officer's testimony that Franqui voluntarily waived his rights and eventually confessed to be reliable. Franqui, 965 So.2d at 36. The evidence, provided by the investigating officers, and accepted as true by the trial court, explicitly denies any coercion, threats, or physical assaults. See App. S. Vol. 11 at 898, 899, 912, and 941. To upset this finding of fact by the trial court and to show an unreasonable determination of the facts, Franqui "must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" Gilliam v. Secretary for Dept. of Corrections, 480 F.3d 1027, 1032 (11th Cir. 2007). Franqui has failed to rebut the presumption and has not provided clear and convincing evidence that the trial court erroneously found his waiver of rights voluntary or that unlawful coercion took place during his interrogation. Further, the evidence reveals that Franqui was questioned regarding this case for less than the alleged twenty hours because he was not specifically questioned about the robbery until he executed his Miranda waiver and he was provided with a series of breaks that included food, beverage, and the opportunity to talk with his girlfriend. See App. S. Vol. 11 at 906, 917, 919, 924, 942, 951, 954,

14

and 948. Franqui has not shown the findings of fact of the trial court to be unreasonable by clear

and convincing evidence and those findings are therefore presumed correct; accordingly,

Franqui's first claim for relief must be denied.

### B. Claim 2: Alleged Unconstitutional Circumstances of Trial

Second, Franqui argues that he was sentenced to death under circumstances that render

his capital punishment unconstitutional and violates his constitutional rights. Franqui lists

approximately thirteen circumstances that allegedly caused his constitutional rights to be

violated:

> (1) He [Franqui] did not fire the fatal bullet, (2) there was no evidence that he was
> in control of any other codefendant or that he directed or supervised their acts, (3)
> the State was erroneously allowed to argue before the sentencing jury that if
> aggravating factors were stronger than mitigating factors, it was the jury's
> obligation to sentence Mr. Franqui to death, (4) the court refused to permit
> defendant from presenting evidence relating to the voluntariness of his confession
> at sentencing and re-sentencing, (5) his intelligence quotient was tested at 60 and
> he was found to be suffering from major mental illness, (6) any responsibility for
> its decision to recommend death was removed from the jury by jury instructions
> informing them that they merely made recommendations but the responsibility for
> all life or death decisions rested with the judge, (7) the decision to impose a death
> sentence was not made by a jury, let alone a unanimous jury, and the sentencing
> court found a fact which increased the penalty from life incarceration to death, (8)
> the jury was permitted to and instructed that Franqui could receive the death
> penalty even though he did not kill Officer Bauer, (9) the sentencing jury was
> irreparably tainted by the argument of the State that they were under an obligation
> to return a death recommendation, (10) the State rested its case on a tainted
> confession, which was not videotaped until Franqui had made his confession, (11)
> Assistant State Attorney DeGregory obtained the confession, but he was protected
> from being required to give relevant evidence, (12) the State's charging document
> did not disclose the theory of prosecution: felony murder or first degree
> premeditated murder, (13) he did not make a knowing waiver of his right to
> remain silent or his right to counsel.[6]

---

[6]All of these statements were obtained from Franqui's Petition for Habeas Corpus and are
either verbatim or paraphrased.

See Pet. (dkt # 1) at 14.  These issues, however, also fail to provide Franqui with any relief because these claims are either unexhausted, procedurally barred, or without merit.  Franqui's claims numbered (1), (4), (6), (7), (8), (10), (12) and (13)[7] will be separately addressed in connection with Franqui's other arguments.

Claims (3) and (9), which argue that the State was erroneously allowed to argue before the sentencing jury that if the aggravating factors were stronger than the mitigating factors, it was the jury's obligation to sentence Mr. Franqui to death, does not merit reversal.  The Florida Supreme Court, after Franqui's resentencing, found that the erroneous misstatements of law made by the State and repeated by the trial court were harmless errors because "the trial court did not repeat the misstatement of law when instructing the jury prior to its deliberations." Franqui v. State, 804 So.2d 1185, 1193 (Fla. 2001).  The erroneous misstatement was made at the very outset of the trial before evidence and testimony were presented and this error was corrected both during voir dire and when the jury was instructed immediately prior to its deliberation.  Id. Further, the trial court utilized defense counsel's jury instruction regarding the relationship between mitigating and aggravating circumstances, which apprised the jury "that the weighing process was not a mere counting of the aggravating and mitigating circumstances, but rather a reasoned judgment as to what the appropriate sentence should be in light of the nature of the aggravating and mitigating circumstances found to exist." Id.  The Florida Supreme Court went on to hold that because the inappropriate comments were isolated, later corrected, and the jury

---

[7] The following is a list of the claims and the section of this Court's order in which they are addressed: claim (1): IV(D) and IV(C), claim (4): IV(C) and IV(D), claim (6): IV(F), claim (7): IV(F), claim (8): IV(B) and IV(F), claims (10) and (13): IV(A).  Accordingly, these claims will not be revisited in this section.

was ultimately provided with correct instruction, drafted by defense counsel, any error that occurred was harmless. The Florida Supreme Court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law." Brown v. Payton, 544 U.S. 133, 141 (2005). The Supreme Court found in Brown that where the prosecutor made erroneous comments in a capital case regarding mitigating evidence and less corrective measures were taken, no habeas relief was required. Id. at 1441-42. Therefore, Franqui's claims (3) and (9) are denied.

Franqui next argues, in claim (5), that he allegedly has an IQ of 60 and suffers from mental illness, which the trial court allegedly failed to take into consideration. This claim of mental illness was not presented in the trial court because trial counsel did not believe Franqui suffered from mental illness or abnormally low intelligence and the same trial judge had found evidence of mental illness incredible during the Hialeah murder proceeding. See Franqui v. State, 965 So.2d 22, 32 (Fla. 2007). Consequently, the Florida Supreme Court determined that this claim was procedurally barred because it was raised for the first time on appeal. Id. Under the same reasoning in section IV-A, *supra*, Franqui's mental health claim is unexhausted and thus denied unless Franqui can show cause and prejudice. Franqui has failed to allege cause or prejudice; moreover, his claim of mental illness and diminished capacity lacks merit. In addition, Franqui specifically agreed, in open court, with his counsel's decision not to present Dr. Toomer's letter regarding mental illness at resentencing. See Id. at 32.

For the sake of complete review, the Court examines the following claim: Franqui includes an extraneous footnote in his motion for post-conviction relief that the U.S. Supreme Court's Atkins decision, prohibiting the execution of mentally retarded inmates, precludes his

execution. See App. S. Vol. 1 at 110 n.2. Under Florida Rule of Criminal Procedure 3.203, if Franqui wished to raise a claim of mental retardation to prevent his execution based upon Atkins, he had sixty days from October 1, 2004, to do so. Franqui failed to raise this argument during that time frame. See also Hill v. State, 921 So.2d 579, 584 (Fla. 2006) (finding death row inmate's Atkins claim procedurally barred because he failed to follow Florida Rule of Criminal Procedure 3.203). In addition, the State brought forth evidence at Franqui's Hialeah trial that Franqui's IQ, according to the accepted Wechsler Test, was 83, which is thirteen points above the mental retardation level. See Franqui v. State, 965 So.2d 22, at n.7 (Fla. 2007). The only evidence even remotely indicating Franqui's alleged mental retardation was provided by Dr. Toomer during the Hialeah trial and it was found to be incredible. Id. at 30-31. Therefore, Franqui's claim of mental illness and diminished capacity are denied as unexhausted, procedurally barred, and without merit.[8]

Franqui next contends in claim (11) that he was denied his constitutional rights in being prevented from calling Assistant State Attorney Kevin DiGregory.[9] The trial court properly refused to permit DiGregory to be called because he had not been subpoenaed and every effort must be made to avoid having a prosecutor also act as a witness. See App. S. Vol. 12 at 1171. Further, the Florida Supreme Court has long held that "the practice of acting as prosecutor and witness is not to be approved and should be indulged in [sic] only under exceptional circumstances." Shargaa v. State, 102 So.2d 809, 813 (Fla. 1958) (stating the better practice is to

---

[8]In addition, his claim of ineffective assistance of counsel for failure to raise the issue of his mental incapacity is also denied for the reasons stated in Section IV-A, *supra*.

[9]Franqui's claim regarding ineffective assistance of counsel for failure to call DiGregory is examined in Section C *infra*.

18

avoid prosecutor testifying as witness except under exceptional circumstances, but harmless error for prosecutor to testify where only done for identification purposes).

Franqui failed to raise this issue on appeal; thus, the claim is unexhausted and under the prohibition against successive petitions, it is procedurally barred. See App. S. Vol. 3 at 302 (finding "[c]laim four, asserting trial court error, is procedurally barred as it should have been raised on direct appeal"); see also Franqui v. State, 965 So.2d 22, 38 (Fla. 2007). Since this claim is barred in state court, the claim is also barred here. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999); see also 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State.").

Because of the procedural bar, this court cannot examine Franqui's claim of trial court error unless Franqui can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991) (emphasis added). Franqui is unable to satisfy this demanding standard because he does not have a meritorious reason for the default and since any claim that his counsel was ineffective for raising this claim on appeal is also without merit.[10] Further, Franqui cannot demonstrate actual prejudice or a fundamental miscarriage of justice because during the post-conviction proceedings, Franqui failed to establish that prosecutor DiGregory was the only individual who

---

[10] The claim of ineffective assistance of counsel is examined and denied in Section C *infra*.

19

had the pertinent information regarding Franqui's questioning or that other means had been reasonably exhausted to obtain the information sought. See State v. Donaldson, 763 So.2d 1252, 1254-55 (Fla. 3d Dist. Ct. App. 2000); see also Eagan v. DeManio, 294 So.2d 639, 640-41 (Fla. 1974). Therefore, Franqui's claim regarding trial court error in not allowing Franqui to call prosecutor DiGregory is procedurally barred and fails on the merits. Accordingly, Franqui's claim (2) alleging unconstitutional circumstances of trial is denied.[11]

### C. Claim 3: Ineffective Assistance of Counsel

The next portion of Franqui's petition argues that he received ineffective assistance of counsel at every stage of the proceedings, which violated his constitutional rights. Franqui alleges over ten claims of ineffective assistance of counsel, but some of these claims overlap and are combined and addressed together. The standard for resolving claims of ineffective assistance of counsel is set forth below and thereafter applied to each such claim.

The Florida Supreme Court properly utilized the Strickland criteria in determining that Franqui's counsel was not ineffective. The Supreme Court announced its ineffective assistance of counsel standard in Strickland v. Washington, which also involved the imposition of a capital sentence by a Florida trial court .466 U.S. 668 (1984). There, the defendant claimed that his

---

[11] For additional analysis regarding the non-meritorious nature of this claim see section C, p. 28 *infra*. Furthermore, Franqui's claim (2) is also denied because it was not exhausted in the state court system and is, therefore, procedurally barred. Further, evidence was presented that Franqui had taken an active role in organizing the robbery. See Franqui v. State, 804 So.2d 1185, 1189 (Fla. 2001). Finally, Franqui was sentenced to death based upon the following three aggravating factors: a prior conviction, murder during course of robbery, and victim was a law enforcement officer. In addition to being procedurally barred, Franqui's claim regarding his alleged lack of control over the other codefendants is denied on the merits.

counsel was ineffective at the sentencing proceeding following a plea of guilty. Id. at 676. The

Supreme Court announced the standard for determining ineffective assistance of counsel as

follows:

> A convicted defendant's claim that counsel's assistance was so defective as to require
> reversal of a conviction or death sentence has two components. **First**, the defendant
> must show that counsel's performance was deficient. This requires showing that
> counsel made errors so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. **Second**, the defendant must
> show that the deficient performance prejudiced the defense. This requires showing
> that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable. Unless a defendant makes both showings, it cannot be said
> that the conviction or death sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

Id. at 687 [emphasis added]. In order for Plaintiff to be entitled to relief, he must demonstrate

that the state courts improperly applied this two prong, exacting standard, or the state court's

determination resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law.

Further, many of Franqui's claims remain unexhausted. In order to exhaust a claim,

Franqui is required to "give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review process."

O'Sullivan v. Boerckckel, 526 U.S. 838, 845 (1999). Exhaustion only occurs if the precise claim

that is presented on federal habeas review was also presented for state court review at every

appropriate level. See Picard v. Connor, 404 U.S. 270, 276 (1971) (holding "we have required a

state prisoner to present the state courts with the same claim he urges upon the federal courts").

It is not enough for petitioner to present an underlying claim in state court and then present a

claim of ineffective assistance of counsel based upon that underlying claim; the ineffective

21

assistance of counsel claim must be raised as a separate claim so that the state court has the opportunity to address that claim before it reaches federal court. Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000) ( found that permitting ineffective assistance of counsel claim to be raised for the first time in federal court, absent cause or prejudice, would defeat the purpose of the federal exhaustion rule). The Edwards Court further held that a petitioner's argument of ineffective assistance of counsel as the cause for the procedural default of another claim "can itself be procedurally defaulted" because it was not raised in the state court proceedings. Id.

When a claim is unexhausted, the federal habeas court cannot provide relief pursuant to 28 U.S.C. § 2254(b)(1)(A). Furthermore, when a claim is not exhausted, but would be barred if brought again in state court, a federal court can exercise the applicable state law rules and bar the claim because exhaustion is impossible. See Teague v. Lane, 489 U.S. 288, 297-99 (1989). In Florida, a defendant is not permitted to raise a claim that is untimely or a successive motion for post-conviction relief that was available during his prior post-conviction relief proceeding. See Johnson v. Singletary, 647 So.2d 106, 109 (Fla. 1994) ("Successive habeas corpus petitions seeking the same relief are not permitted nor can new claims be raised in a second petition when the circumstances upon which they are based were known or should have been known at the time the prior petition was filed.").

Once the court establishes that a claim is barred, the court may only examine the merits of the claim if petitioner can demonstrate cause and prejudice to overcome the procedural bar. See Coleman v. Thompson, 501 U.S. 722, 750 (1991) ("We now make it explicit: in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the

prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice."). If the court determines that petitioner has adequately

demonstrated cause and prejudice for the default or a fundamental miscarriage of justice will

result without review, the court may review the claim on the merits. This Court is empowered to

review the state court's decision to reject Franqui's claims even if the state court did not provide

an explanation for its decision. See Isaacs v. Head, 300 F.3d 1232, 1258-60 (2002). Using this

standard of review, which will not be duplicated for each claim, this Court now addresses

Franqui's claims for ineffective assistance of counsel.[12]

     Franqui alleges that his trial counsel was ineffective for failing to contest the indictment,

which charged first degree murder based upon alternative theories of premeditated and felony

murder. Franqui did raise this claim during his post-conviction proceeding, but after it was

denied, he failed to appeal. See App. S. Vol. III at 111; see also App. L at 80-85. Therefore,

Franqui's ineffective assistance of counsel claim is unexhausted and procedurally barred.

Franqui has also failed to establish any type of cause or prejudice for the default. Even though

Franqui does not say so explicitly, if he attempted to argue that his post-conviction counsel's

ineffectiveness was the cause for the default, this Court would also deny that claim. In Coleman,

the Supreme Court found that claims of post-conviction counsel error or ineffectiveness do not

satisfy the cause requirements for procedural default. See Coleman v. Thompson, 501 U.S. 722,

---

[12] Franqui first claims that his trial counsel was ineffective regarding suppression of
Franqui's confession and that appellate counsel was equally ineffective for failing to raise the
issues of suppression on appeal. This Court denies Franqui's claim for the reasons stated in
section IV-A, *supra*, where the court denied this claim.

23

753 (1991) (holding no right to counsel beyond direct appeal; thus, no right to counsel for post-conviction proceedings and any attorney error does not amount to cause sufficient to overcome the habeas default requirements).  In addition, § 2254 expressly prohibits a claim of ineffectiveness or incompetence of counsel during post-conviction proceedings as grounds for relief.  See 28 U.S.C. § 2254(i) ("[I]neffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").  Franqui has thus failed to present any cause, prejudice or a fundamental miscarriage of justice and his claim is denied as procedurally barred.

Franqui's claim fails on the merits as well because at the time of his indictment, the Florida Supreme Court's Lightbourne holding had not been called into question.  Lightbourne v. State, 438 So.2d 380 (1983).  In Lightbourne, the Florida Supreme Court held that indictments for first degree murder may include alternate methods and bases for conviction, and including premeditated murder and felony murder in one indictment is permissible.  Id. at 384.  Counsel cannot be found ineffective under the Strickland standard for failing to anticipate a change in law that had not yet occurred.  For this reason, Franqui's claim is denied on the merits.

Franqui next argues that his counsel was ineffective in failing to "object to jury instructions which permitted a first degree murder conviction for a person who had killed no one and had been, according to the evidence, a follower not a leader or organizer."  See Pet. (dkt # 1) at 18.  Franqui failed to raise this ineffective assistance of counsel claim during his post-conviction proceedings and thus the claim is unexhausted and procedurally barred.  See Teague v. Lane, 489 U.S. 288, 297-99 (1989); see also Johnson v. Singletary, 647 So.2d 106, 109 (Fla. 1994).  Franqui fails to demonstrate adequate cause for the default, actual prejudice, or that it

24

constitutes a fundamental miscarriage of justice to decline review of the claim. Again, it is imperative to note that it is absolutely Franqui's burden to establish cause and actual prejudice or that failure to consider the claims will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). Furthermore, despite this Court's ability to deny Franqui's claim as procedurally barred, his claim is also denied on the merits as it is facially insufficient. Counsel cannot be ineffective for failing to object to what is a correct instruction of law. Any claim of ineffective assistance of counsel must include proof that the alleged ineffective assistance caused the defendant prejudice. See Strickland, 466 at 676, 693. Franqui fails to demonstrate how the failure to object to a jury instruction actually prejudiced him; consequently, this claim, as well as his underlying claim, are denied on these grounds as well.

Franqui next claims that his counsel was ineffective in failing to litigate Franqui's request for individual and sequestered voir dire. Franqui raised this claim during his post-conviction proceeding, but it was denied and he failed to appeal the denial. See Franqui v. State, 965 So.2d 22, 27-28 (Fla. 2007); see App. L. Therefore, this claim is unexhausted and procedurally barred. Franqui has also failed to establish any type of cause or prejudice for the default or that a miscarriage of justice would result by not reviewing this claim. Again, had he attempted to argue that his post-conviction counsel's ineffectiveness was the cause for the default, this Court would also deny that claim. See Coleman v. Thompson, 501 U.S. 722, 753 (1991); see also 28 U.S.C. § 2254(i).

Franqui's claim also fails on the merits because he has not demonstrated any actual prejudice that he suffered as a result of counsel's alleged error in litigating individual and sequestered voir doir. See Strickland, 466 at 676, 693. Furthermore, the record indicates that the

25

judges at both trial and re-sentencing did engage in individual voir dire regarding the murder's "sensational publicity." See App. Q. Vol. 6 at 257, 264; see also App. R. Vol. 2 at 8, 28. The trial and re-sentencing judges both separated every individual who had heard about the case and questioned them individually about what they had heard, any preconceived notions or bias, and whether they could remain impartial given their previous exposure. Id. Franqui's claim of ineffective assistance of counsel appears to focus on the "sensational publicity" preventing a fair jury from being seated. See Pet. (dkt # 1) at 19. The court, however, addressed and alleviated this concern by engaging in individual voir dire regarding the publicity. Thus, in addition to being denied as procedurally barred and without merit, Franqui's claim is also denied as moot to the extent he received the jury safeguards that he claims his counsel erred in not obtaining.

Franqui's next claim asserts that his trial counsel was ineffective for failing to preserve a patent trial error in allowing the state to peremptorily challenge juror Pascual, when seated juror Pierre-Louis expressed similar feelings, but was not challenged. Franqui did raise this claim during his post-conviction proceeding, but after it was denied on the merits, he failed to appeal that denial. See Franqui v. State, 965 So.2d 22, 27-28 (Fla. 2007); see App. L. This claim is unexhausted and procedurally barred. Franqui's claim is also denied because he failed to establish any type of cause or prejudice for the default or that a miscarriage of justice would result by not reviewing this claim. Had Franqui attempted to argue that his post-conviction counsel's ineffectiveness was the cause for the default, this Court would also deny that claim. See Coleman v. Thompson, 501 U.S. 722, 753 (1991); see also 28 U.S.C. § 2254(i).

Despite the procedural bar, Franqui's claim fails on the merits as well because he has not demonstrated any actual prejudice that he suffered resulting from counsel's alleged error

26

regarding the State's peremptory challenge to juror Pascual.  See Strickland, 466 at 676, 693.

The record reveals that the State made a proper peremptory challenge against juror Pascual

because she had expressed doubt regarding whether she could recommend death for a non-

triggerman.  See App. S. Vol. 3 at 310; see also Kramer v. State, 619 So.2d 274, 276 (Fla. 1993)

(holding that juror equivocation regarding death penalty views is sufficient for properly

exercising a peremptory strike).  Franqui states that juror Pierre-Louis expressed similar concerns

about the death penalty and the State did not challenge him, which Franqui alleges reveals the

State's true motive in striking Pascual.  Juror Pierre-Louis, however, possessed characteristics

that the State might want in a potential juror that juror Pascual did not: he had friends who were

state troopers, had sat on a criminal jury before, had been the victim of a crime, had never been

arrested, and his wife worked for Metro Dade.  See App. Q. Vol. 7. at 428-30.[13]  Further, the

State struck juror Smith for the same reasons it struck Pascual and the trial court made a

determination that the State's peremptory challenge against Pascual was for a valid, race neutral

reason.  The trial court's determination that juror Pascual was struck for a race neutral reason was

a finding of fact entitled to great deference.  See Hernandez v. New York, 500 U.S. 352, 364

(1991) (Plurality Opinion).  Franqui has failed to demonstrate, based upon the facts, why this

finding was in error.  Therefore, Franqui's claim is denied on the merits.

In his next ineffective assistance of counsel claim, Franqui states that his trial,

resentencing, and appellate counsel were all ineffective for failing to either call Assistant State

Attorney Kevin DiGregory or raise the issue of his exclusion on appeal.  Franqui raised his claim

---

[13]Juror Pascual did not mention any family or close connections to police officers, had never served on a jury, was unmarried, and had never been the victim of a crime.  See App. Q. Vol. 7. at 421-22.

for ineffective assistance of trial counsel in his post-conviction proceeding, but after that claim was denied he did not appeal its denial. See <u>Franqui v. State</u>, 965 So.2d 22, 27-38 (Fla. 2007). Therefore, this claim is unexhausted and procedurally barred. Franqui's claim against resentencing and appellate counsel regarding the court's prohibition on calling Mr. DiGregory was also not taken through the appellate process; thus, that claim is unexhausted and procedurally barred. This claim fails as well because Franqui has not established any type of cause or prejudice for the default or that a miscarriage of justice would result by not reviewing this claim. Franqui's allegations that post-conviction counsel's ineffectiveness was the cause for the default is without merit. See <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991); <u>see also</u> 28 U.S.C. § 2254(i). Franqui did include, in his Florida Supreme Court petition for writ of habeas corpus, a claim in which he alleged that "appellate counsel was ineffective when he failed to raise on direct appeal the trial court's decision to prevent defense counsel Cohen from calling Assistant State Attorney Kevin DiGregory as a witness." <u>Franqui v. State</u>, 965 So.2d at 38.[14] Assuming Franqui's claim regarding appellate counsel raised in his Florida Supreme Court habeas petition is exhausted, this Court denies that claim on the merits.

 To be successful on his ineffective assistance of counsel claims regarding the trial court's denial of Mr. DiGregory's testimony, Franqui must meet the two pronged <u>Strickland</u> requirements. <u>Strickland</u> requires the claimant to establish that counsel's performance was deficient and that the deficiency caused actual prejudice to the defendant that deprived him of a

---

[14]The Florida Supreme Court denied this claim finding that it was insufficiently pled because the claim lacked specificity and was too hypothetical in nature. <u>Id.</u> This Florida Supreme Court determination also stands because it is not contrary to Federal law nor an unreasonable determination of the facts based upon the evidence presented. 28 U.S.C. § 2254 (e)(1) (1996).

fair trial. Strickland v. Washington, 466 U.S. at 687. Franqui has failed to adequately establish that he suffered any prejudice and was deprived of a fair trial for his counsel's failure to litigate the calling of Mr. DiGregory because the underlying issue of calling Mr. DiGregory is without merit.

Florida law provides that defendants should only be permitted to call prosecutors as witnesses as a last option after exercising the standard discovery procedures. See Eagan v. DeManio, 294 So.2d 639, 640-41 (Fla. 1974); see also State v. Donaldson, 763 So.2d 1252, 1254-55 (Fla. 3d Dist. Ct. App. 2000). This Court follows Florida evidentiary standards and will only deviate from these standards, as dictated by the Florida Supreme Court, if there is a constitutional violation. See Breedlove v. Moore, 279 F.3d 952, 964 (11th Cir. 2002). The Supreme Court has held that states may establish laws and rules that exclude evidence from criminal trials, but the rules cannot "infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." Holmes v. South Carolina, 547 U.S. 319, 324-5 (2006). Here, the rule discouraging the calling of prosecutors as witnesses until other methods and individuals have been exhausted first is not disproportionate to the purposes of protecting prosecutorial work product, avoiding prosecutor disqualification, and allowing criminal prosecutions to continue without needless delay. See Eagan v. DeManio, 294 So.2d 639, 640-41 (Fla. 1974). Further, the rule allows the defendant to obtain the information through other means and, if unable to procure the information through other discovery measures, the rule permits the defendant to request that the prosecutor be called as a witness. Id. As stated in section IV-B, *infra*, Franqui failed to subpoena Mr. DiGregory, did not utilize the required discovery procedures first, and failed to show that Mr. DiGregory was the only individual who

29

had the desired information that was allegedly material to the preparation of Franqui's defense. Non-meritorious claims that were not raised on appeal do not constitute ineffective assistance of counsel. See Diaz v. Sec. Dept. of Corrections, 402 F.3d 1136, 1144-45 (11th Cir. 2005). As Franqui's underlying claim regarding the calling of Mr. DiGregory is without merit, his claim of ineffective assistance of counsel is likewise without merit and denied.

Franqui next states that his counsel was ineffective because of his unsuccessful attempts to exercise peremptory challenges against venire members. First, Franqui argues that his trial counsel was ineffective when, upon the State's objection, counsel failed to provide a race neutral reason for the exercise of a peremptory challenge of juror Diaz. Second, Franqui claims his counsel was ineffective for failing to be heard regarding its objection to seating juror Andani. Franqui raised both of these claims on direct appeal as well as in his 3.851 motion for post-conviction relief. Therefore, these claims have been exhausted, but are nonetheless denied on the merits.

During jury selection, Franqui's counsel attempted to strike Cuban juror Aurelio Diaz and the State challenged Franqui's peremptory challenge on racial discrimination grounds. See Franqui v. State, 699 So.2d 1332, 1334 (Fla. 1997). In response to the State's objection, the court inquired as to Franqui's reason for striking juror Diaz, and Franqui's counsel's response was, "I don't like him." Id. Franqui alleges that his counsel was ineffective in failing to present a race neutral reason for striking juror Diaz. The state post-conviction court properly applied the Strickland ineffective assistance of counsel framework and determined that counsel had not been deficient and even if there was a deficiency it did not rise to a level that deprived Franqui of a fair trial. See App. S. Vol. 3 at 308.

30

The Florida Supreme Court also determined that counsel was neither deficient nor responsible for any prejudice in his handling of juror Diaz. See Franqui v. State, 965 So.2d 22, 33 (Fla. 2007) (stating "we find no error in the trial court's denial of relief on this claim since Franqui has shown neither deficient performance nor prejudice"). These rulings are consistent with the Supreme Court's Strickland decision. Under Strickland, Franqui must demonstrate that his counsel was deficient and that the deficiency resulted in actual prejudice preventing a fair trial. Strickland, 466 U.S. at 690. Franqui does not buttress his ineffective assistance of counsel claim with any actual allegations of prejudice, and fails to meet his burden of identifying "the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgement." See Id. Therefore, the Florida Supreme Court's decision was not contrary to, or an unreasonable application of, federal law. Under Strickland, judicial review of defense counsel's performance is highly deferential and courts are to presume that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id.

Franqui has not provided any evidence that juror Diaz rendered his trial unfair or that juror Diaz was somehow biased against Franqui. In fact, during co-defendant San Martin's examination of juror Diaz, juror Diaz stated that he would be able to act impartially, that not all premeditated murderers should be sentenced to death, and that he would study the facts before rendering an opinion. See App. Q. Vol. 8 at 756-60. These are typically the traits that make up a sound juror and crucial to the rendering of a fair verdict. There is no evidence of juror Diaz's

inability to be impartial.[15]  Franqui's claim of ineffective assistance of counsel based upon the alleged failure to provide a race neutral reason for the striking of juror Diaz is denied as Franqui has failed to show any actual prejudice that resulted in counsel's alleged error.[16]

Franqui also avers that his counsel was ineffective for failing to object and preserve a patent trial error, which disallowed a defense strike against juror Adriana Andani. For the same reasoning articulated in the analysis regarding juror Diaz, this Court denies Franqui's ineffective assistance of counsel claim as it pertains to juror Andani. Again, as the Florida Supreme Court properly held, Franqui is unable to meet the two prong Strickland test for ineffective assistance of counsel because Franqui cannot show that counsel was so ineffective that he was not acting as counsel or that Franqui suffered any actual prejudice as a result. See Franqui v. State, 965 So.2d 22, 33 (Fla. 2007); see also Strickland, 466 U.S. at 668. During his co-defendant's questioning of juror Andani, Andani stated that she would use her common sense, maintain an open mind, and pay attention to the circumstances of the crime. See App. Q. Vol. 8 at 669-71. Concerning juror Andani, Co-defendant's counsel stated, "[n]o, she has got it down. This is precisely how it works." Id. at 671. Franqui's claim of ineffective assistance of counsel is denied regarding jurors Diaz and Andani because the Florida Supreme Court did not commit error in determining

---

[15] Furthermore, if Franqui was seriously concerned about juror Diaz's ability to be impartial, he could have attempted to strike him for cause, which the record does not indicate occurred. After reviewing juror Diaz's examination, it is unclear what grounds for concern regarding impartiality could have possibly existed, making any challenge for cause a futile effort.

[16]For these same reasons, this Court finds no error with the Supreme Court of Florida's determination that "Franqui has made no showing of any prejudice that could have resulted from defense counsel's alleged deficiencies on these jury issues." Franqui v. State, 965 So.2d 22, 32 (Fla. 2007).

that Franqui failed to meet the two-pronged Strickland requirements.

In his next claim of ineffective assistance of counsel, Franqui argues that his resentencing counsel was ineffective for failing to relitigate the suppression issue or present evidence concerning the voluntariness of his confession to the resentencing jury. Franqui did raise these issues during his post-conviction proceedings. See Franqui v. State, 965 So.2d 22, 27 (Fla. 2007). The state post-conviction court denied Franqui's claims, finding that Petitioner was not permitted to present evidence regarding an alleged involuntary confession, which goes to guilt, at the penalty phase of a capital case. See App. S. Vol. 3 at 304-06, 329. On appeal from the post-conviction sentencing court, Franqui did raise the claim that resentencing counsel was ineffective for failing to relitigate the suppression of his confession during resentencing. See Franqui v. State, 965 So.2d 22, 31-32 (Fla. 2007). The Florida Supreme Court also rejected Franqui's claim because it too found that any evidence regarding Franqui's confession would only be relevant to guilt, had nothing to do with the penalty phase of the trial, and went on to hold that evidence is not admissible to attempt to create a lingering doubt as to a defendant's guilt during the sentencing phase of a trial. Id.

The Florida Supreme Court's decision denying any claim of ineffective assistance of counsel was correct; consequently, this Court also rejects Franqui's claims of ineffective assistance of counsel regarding the issue of his confession at resentencing. First, as this Court determined in section IV-A, *supra*, Franqui's underlying claim regarding the alleged involuntary nature of his confession is without merit.[17] Since the underlying claim regarding suppression is

_____

[17]Again, the trial court found Franqui's testimony regarding his interrogation to be incredible and found the investigating officer's testimony that Franqui voluntarily waived his rights and eventually confessed, believable. Franqui, 965 So.2d at 36. The testimony, provided

without merit, counsel cannot be deemed ineffective for failing to raise that issue. See Diaz v.
Sec. Dept. of Corrections, 402 F.3d 1136, 1144-45 (11th Cir. 2005). Second, the state
resentencing court properly denied Franqui's desire to relitigate the suppression of his confession
because it was not relevant or admissible during the penalty phase of a proceeding. See Way v.
State, 760 So.2d 903, 917 (Fla. 2000) (holding that defendant has the right to present evidence at
resentencing, but trial court is within its discretion to preclude the admission of evidence that was
only relevant to rebut the defendant's guilt of the underlying crime). The United States Supreme
Court also stated that there is no constitutional right to have residual or lingering doubt evidence
pertaining to guilt presented during the sentencing phase of a trial as mitigating factors. See
Oregon v. Guzek, 546 U.S. 517, 523-24 (2006) (holding "the Eighth Amendment does not
deprive the State of its authority to set reasonable limits upon the evidence a defendant can
submit, and to control the manner in which it is submitted. Rather, States are free to structure
and shape consideration of mitigating evidence in an effort to achieve a more rational and
equitable administration of the death penalty."); see also Franklin v. Lynaugh, 487 U.S. 164, 173-
74 (1988) (Plurality Opinion). The Florida Supreme Court's rejection of Franqui's claim was not

---

by the investigating officers, and accepted as true by the trial court, explicitly denied the use of
any coercion, threats, or physical assaults. See App. S. Vol. 11 at 898, 899, 912, and 941.  To
upset this finding of fact by the trial court and to show an unreasonable determination of the
facts, Franqui "must rebut 'the presumption of correctness [of a state court's factual findings] by
clear and convincing evidence.'" Gilliam v. Secretary for Dept. of Corrections, 480 F.3d 1027,
1032 (11th Cir. 2007). Franqui has not provided clear and convincing evidence that the trial
court erroneously found his waiver of rights voluntary or that unlawful coercion took place
during his interrogation. Further, the evidence reveals that Franqui was questioned regarding this
case for less than the alleged twenty hours because he was not specifically questioned about the
robbery until he executed his Miranda waiver and he was provided with a series of breaks that
included food and beverage as well as the opportunity to talk with his girlfriend. See App. S.
Vol. 11 at 906, 917, 919, 924, 942, 951, 954, and 948.

at odds with Supreme Court precedent. Therefore, Franqui's claim regarding his apparent "right" to relitigate the suppression of his confession is without merit and counsel cannot be found ineffective for failing to raise a claim that was actually barred. Moreover, since the suppression issue was properly barred, Franqui also fails to meet both prongs of the Strickland ineffective assistance of counsel test because he cannot show that counsel committed error or that Franqui was prejudiced as a result of that error. On these separate grounds, Franqui's claims regarding suppression of his confession at resentencing are denied.

Franqui's ninth ineffective assistance of counsel claim states that his trial and resentencing counsel were ineffective for not presenting evidence of mental health mitigation. This Court has already determined that Franqui's mental health claims are without merit and that trial counsel did not commit error in deciding not to present Dr. Toomer's report. See section IV-B, *supra*. Further, Franqui failed to raise his claim of ineffective assistance of resentencing counsel at the beginning of his post-conviction proceedings and waited until his appeal to the Florida Supreme Court to raise the issue. See Franqui v. State, 965 So.2d 22, 31-33 (Fla. 2007). Consequently, Franqui's claim of ineffective assistance of counsel regarding mental health mitigation is unexhausted and procedurally barred. Further, Franqui has not shown any cause or prejudice for the default or that it would be a fundamental miscarriage of justice to not consider the claim. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also 28 U.S.C. § 2254(i).

Besides being denied on procedural grounds, Franqui's claim of ineffective assistance of counsel regarding the presentation of mental health mitigation evidence is also denied on the merits. As discussed in greater detail in section IV-B, *supra*, the mental health mitigation evidence was inconclusive at best and was even determined to be unbelievable. See n.5, *supra*.

Since the underlying claim lacks merit, counsel cannot be considered ineffective for failing to raise the issue. See Diaz v. Sec. Dept. of Corrections, 402 F.3d 1136, 1144-45 (11th Cir. 2005). Furthermore, in order for Franqui to establish a claim of ineffective assistance of counsel, he must demonstrate deficiency and actual prejudice that prevented a fair trial. See Strickland v. Washington, 466 U.S. 668 (1984). The record actually reflects that Franqui agreed, in open court, at resentencing, with the strategic decision not to present the mental health report. See Franqui v. State, 965 So.2d 22, 32-33 (Fla. 2007).[18] Counsel was a aware of the mental health issue, reviewed the report, and had actually presented it in the Hialeah trial with an unfavorable result. Counsel's strategic choice was informed and made with client consent. See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (finding that counsel's strategic choices made after thorough investigation of law and facts are virtually unchallengeable). Similarly, the Florida Supreme Court properly denied Franqui's claim. See Franqui v. State, 965 So.2d 22, 32-33 (Fla. 2007) (holding "the record reflects that Cohen and Franqui made a joint, strategic decision not to present this evidence at resentencing"). As Franqui's claim is procedurally barred, without merit, fails to establish counsel error or prejudice, and the Florida Supreme Court's determination was not contrary to or an unreasonable application of federal law, the claim is denied.

Franqui next re-alleges his earlier argument: misstatements of law that instructed the jury that if aggravating factors were stronger than mitigating factors, it was the jury's obligation to sentence Mr. Franqui to death, constituted error and Franqui now claims counsel was ineffective

---

[18] "The Court: Mr. Franqui, do you agree with Mr. Cohen's decision not to have me consider the testimony or the report of that doctor?
Mr. Franqui: Yes, your honor." Franqui v. State, 965 So.2d 22, 32-33 (Fla. 2007).

for failing to raise the issue at resentencing and on resentencing appeal. <u>See</u> section IV-B, *supra*. This court has already determined in section IV-B, *supra,* that any error that occurred in the misstatements of law were harmless as the court properly instructed the jury using Franqui's proposed jury instruction. Therefore, as the underlying claim regarding the misstatements are without merit, Franqui's claim of ineffective assistance of counsel is equally without merit as counsel is not required to raise non-meritorious claims. <u>See</u> <u>Diaz v. Sec. Dept. of Corrections</u>, 402 F.3d 1136, 1144-45 (11th Cir. 2005). The Florida Supreme Court found that at all stages of Franqui's proceeding any misstatements or inappropriate comments were "harmless in view of the overall circumstances of the case, including the trial court's instructions to the jury." <u>See</u> <u>Franqui v. State</u>, 965 So.2d 22, 37 (Fla. 2007). This determination is not contrary to, or an unreasonable application of, Supreme Court precedent. <u>See</u> <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637 (1974); <u>see also</u> <u>Greer v. Miller</u>, 483 U.S. 756 (1987). Moreover, to establish a claim of ineffective assistance of counsel regarding failure to raise the issue at resentencing and on appeal, Franqui must establish counsel error and actual prejudice. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Franqui has failed to demonstrate that counsel's alleged deficient performance prejudiced Franqui in such a way as to create an unfair trial that contains an unreliable result. On these separate grounds, Franqui's claim of ineffective assistance of counsel is denied.

Franqui's final ineffective assistance of counsel claim alleges that his resentencing appellate counsel, on direct appeal, failed to adequately argue that the sentencing court erred when it totally rejected the mitigating circumstances that Franqui did not fire the fatal bullet or organize the robbery. This claim is denied on the merits. Franqui's appellate counsel did raise this alleged sentencing court error on appeal because it was actually addressed and rejected. <u>See</u>

Franqui v. State 804 So.2d 1185, 1197 (Fla. 2001) (stating "Franqui also contends that the trial court failed to find and weigh as a mitigating circumstance the fact that he did not fire the fatal bullet"). Thus, the record reflects that Franqui's counsel did present argument regarding Franqui not firing the fatal bullet. The Florida Supreme Court, in determining a lack of ineffective assistance of counsel, on this claim, under Strickland, did not render a decision that was contrary to, or an unreasonable application of, clearly established federal law. Therefore, as Franqui has failed to allege and demonstrate counsel error with any specificity or that any alleged error resulted in actual prejudice preventing a fair trial, the Florida Supreme Court's denial of Franqui's claim of ineffective assistance of counsel was proper and Franqui's claim is denied.

### D. Claim 4: Franqui Claims His Constitutional Rights Were Violated Because He Did Not Fire the Fatal Shot and Because He Was Denied the Opportunity to Challenge His Confession on Resentencing

In Franqui's fourth overall claim, he states that "it is a violation of the United States Constitution to execute a person who did not himself kill another person." Pet. (dkt # 1) at 22. Franqui also claims that it was unconstitutional to allow the sentencing court to hear about Franqui's confession, but not allow Franqui to challenge that confession.

After his resentencing, Franqui asserted his claim on appeal that he did not fire the fatal bullet, which he argues should have been taken into account as a non-statutory mitigating factor and as evidence that death was a disproportionate penalty. See Franqui v. State, 804 So.2d 1185, 1196-99 (2001). The Florida Supreme Court heard and rejected both of Franqui's claims. Id. The facts were uncontroverted that Franqui fired a shot, which hit Officer Bauer in the hip and

38

caused him to fall forward and away from his semi-fortified position. Officer Bauer's fall

forward, out from behind his position of defense, which was caused by Franqui's shot, put

Officer Bauer directly into codefendant Gonzalez's line of fatal fire. Id. at 1197. The Florida

Supreme Court found that under these symbiotic circumstances, Franqui's disarming shot and

Gonzalez's fatal shot, "the trial court did not err in *considering*, but ultimately *rejecting*, the fact

that Franqui did not fire the fatal bullet as a mitigating circumstance." Id. at 1197. The trial

court's method of consideration and the Florida Supreme Court's approval of that method was

correct and without error.

The Supreme Court instructs that mitigating factors must be considered, and it is within

the sentencer's domain to apply the weight deemed necessary, but after consideration of the

mitigating evidence they are obviously not required to give weight to a mitigating factor they

have deemed to be without merit. See Eddings v. Oklahoma, 455 U.S. 104, 114-15 (1982)

(holding "the sentencer, and the Court of Criminal Appeals on review, may determine the weight

to be given relevant mitigating evidence. But they may not give it no weight by excluding such

evidence from their consideration"); see also Schwab v. Crosby, 451 F.3d 1308, 1329 (11th Cir.

2006) (stating a sentencer only has to consider the evidence, but the sentencer is free to

determine that the evidence presented is not mitigating).

Here, the jury was explicitly instructed, through the standard jury instruction on non-

statutory mitigating circumstances, to "consider any aspect of Petitioner's character, record or

background and *any circumstance of the offense as mitigation*." App. R. Vol. 7 at 1157; App. R.

Vol 1. at 144. Further, the Florida Supreme Court also reviewed Franqui's claim that his not

firing the fatal bullet should have represented a non-statutory mitigating factor, and found that

39

the trial court properly considered and rejected the claim. The Florida courts satisfied their constitutional burden of considering the fact that Franqui did not fire the fatal bullet; consequently, their actions were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.[19]

Franqui's allegation that his death sentence is disproportionate to his offense, given that he did not fire the fatal bullet, is also without merit and fails. The Supreme Court has held that a death sentence may be imposed for a participant in a felony murder scenario who was not the shooter, if the non-fatal shooter had "major participation in the felony committed, combined with reckless indifference to human life." Tison v. Arizona, 481 U.S. 137, 157 (1987). As the Florida courts found, and Franqui has not rebutted, Franqui was a major participant in the underlying felony robbery, was knowingly armed during that robbery, and fired a shot at a law enforcement officer who was seeking shelter behind a pillar. Further, Franqui's shot hit the officer and disabled him to such a degree that his codefendant was able to get a clear kill shot. These facts satisfy the Supreme Court requirements of major participation in a felony and reckless indifference to human life. Therefore, the imposition of the death sentence under these

---

[19] In addition, once the sentencer is not persuaded by a particular mitigating factor, after consideration, any review of that determination is highly deferential and the trial court's determination of the mitigating factors are presumed to be correct, "and will be upheld if supported by the record." Knight v. Singletary, 50 F.3d 1539, 1549 (11th Cir. 1995). Here, the record provides more than adequate support that Franqui's not firing of the fatal bullet should have been rejected as a mitigating factor. Franqui's non-fatal shot was directly responsible for forcing Officer Bauer out from behind his limited cover and ultimately served to put Officer Bauer in the path of codefendant Gonzalez's bullet. Further, Franqui has not put forth any evidence that these findings of fact were in error.

circumstances is in accord, rather than contrary to, Supreme Court precedent.[20]

The final subpart of Franqui's fourth claim is the re-allegation that Franqui was denied his constitutional rights when he was prevented from rearguing the validity of his confession at resentencing. This Court has already denied both the underlying claim regarding the voluntariness of the confession, explained why Franqui was not permitted to relitigate guilt at sentencing, and found that counsel was not ineffective for failing to relitigate the voluntariness of the confession at the sentencing phase. Consequently, based upon this prior reasoning and that Franqui's guilt had already been established, Franqui's re-allegation of this same claim regarding the voluntariness of his confession at the sentencing phase is denied.[21]

### E. Claim 5: Alleged Defectiveness of Charging Indictment

Franqui argues that the charging indictment was defective because it did not specify whether Franqui was being charged under a theory of felony or premeditated murder. Franqui failed to raise this claim on direct appeal after both his original sentencing and after resentencing. Consequently, this claim is unexhausted, and cannot now be brought in Florida state court because it is procedurally barred.[22] Since this claim is procedurally barred, this court cannot

---

[20] The Florida Supreme Court specifically found the *Enmund-Tison* culpability requirement met, finding that Franqui not only possessed the requisite reckless indifference to life, but actually possessed a more culpable level of mens rea because he intended to use lethal force in carrying out the robbery. See Franqui v. State, 804 So.2d, 1185, 1197 (Fla. 2001).

[21] Further, Franqui raised this claim in his motion for post-conviction relief, but after it was denied, he failed to appeal the court's denial of that claim; consequently, the claim is unexhausted, procedurally barred, and denied on that ground as well.

[22] In addition, Florida Rule of Criminal Procedure 3.190(c) requires that defendant move to dismiss the indictment or information either before or at arraignment, or if there is a good cause reason, then at latest during the trial. See Fla. R. Crim. P. Rule 3.190(c); see also Spinkellink v. Wainright, 578 F.2d 582, 609-10 (5th Cir. 1978).

examine Franqui's claim regarding the alleged trial court error unless Franqui can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Franqui is unable to satisfy this demanding standard because he does not have a meritorious reason for the default since any claim that his counsel was ineffective for raising this claim on appeal is without merit.[23] For the same reasons articulated in Section C, *supra*, Franqui's claim challenging the indictment is also denied on the merits.[24]

### F. Claim 6: Constitutionality of Florida's Death Penalty Scheme

In his final claim, Franqui alleges that the Florida death penalty scheme is unconstitutional. Franqui specifically identifies the following aspects of Florida's capital scheme as unconstitutional: no unanimous recommendation of death from sentencing jury, the jury is only permitted to make a recommendation regarding a sentence of life or death, and an actor other than the finder of fact imposes a sentence greater than that which is provided by law. See Pet. (dkt # 1) at 26. Franqui's final claim also fails as it is without merit.

Franqui did not raise this claim on direct appeal, but did allege that his counsel was ineffective for failing to challenge the constitutionality of Florida's death penalty scheme. Both the state post-conviction court and the Supreme Court denied Franqui's claim of ineffective

---

[23] The claim of ineffective assistance of counsel is examined and denied in Section C, *supra*.

[24] Furthermore, Franqui's citation to Ring v. Arizona, 536 U.S. 584, 597 (2002), is not applicable because constitutionality of the indictment was not at issue in that case. Also, the Fifth Amendment right to presentment or indictment of a grand jury has yet to be held applicable to the states. See Apprendi v. New Jersey, 530 U.S. 466, 477 n. 3 (2000).

assistance of counsel as it related to the constitutionality of Florida's death penalty scheme. One

of Franqui's post-conviction claims alleged that the Florida capital scheme was unconstitutional

in light of the Supreme Court's decision in Ring v. Arizona, 536 U.S. 584 (2002).

The Florida Supreme Court properly denied Franqui's claim as it pertains to Ring. The

Florida Supreme Court concluded that because Ring did not apply retroactively, Franqui was not

entitled to any relief. See Franqui v. State, 965 So.2d 22, 35, 36 (Fla. 2007). This determination

was in accord with Supreme Court precedent. The Court held in Schiro v. Summerlin that

Ring's holding did not apply retroactively to cases that were final when Ring was decided. 542

U.S. 348, 353 (2004); see also Turner v. Crosby, 339 F.3d 1247, 1283 (11th Cir. 2003).

Franqui's convictions were final in 1998 and his death sentence has been final since April 8,

2002 [90 days after the Florida Supreme Court denied rehearing in which Franqui needed to have

petitioned for certiorari], which is two months prior to the Ring decision. See Sup. Ct. R. 13

(petition for certiorari due 90 days after entry of judgment); see also Franqui v. State, 804 So.2d

1185 (Fla. 2001); see Ring, 536 U.S. at 2002 (decided June 24, 2002). Consequently, the Ring

decision is not applicable to Franqui's claim.

To the extent Franqui is arguing that the Florida death penalty scheme is unconstitutional

apart from Ring, his claim is unexhausted and procedurally barred as it was not raised on appeal

in the State Court system. See Picard v. Conner, 404 U.S. 270, 275 (1971); see also Teague v.

Lane, 489 U.S. 288, 297-99 (1991). In addition to being denied as procedurally barred, Franqui's

claim can also be denied on the merits. The Supreme Court has already determined that the

Florida sentencing scheme is constitutional. See Hildwin v. Florida, 490 U.S. 638, 638-41

(1989) (finding no Sixth Amendment violation where specific findings that authorize the

imposition of capital punishment were not made by the jury). In addition, the Supreme Court has found no constitutional violation where a state jury convicts without unanimity. See Apodaca v. Oregon, 406 U.S. 404, 406 (1972). Therefore, Franqui's claim alleging unconstitutionality of Florida's capital system is also denied for lack of merit.

## V.     CONCLUSION

Therefore, it is

ORDERED AND ADJUDGED that Petitioner's Petition for Writ of Habeas Corpus by a Person in State Custody (dkt # 1) is DENIED ON ALL CLAIMS. It is further

ORDERED AND ADJUDGED that as Petitioner's claims are without merit, he has failed to include any allegations as to why he is entitled to an evidentiary hearing, he has failed to allege facts that if proven would entitle him to relief, and a hearing would not assist in resolution of his claims, the Court DENIES PETITIONER AN EVIDENTIARY HEARING.[25] It is finally

ORDERED AND ADJUDGED that the clerk of Court is directed to CLOSE this case and any remaining motions not yet ruled upon are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this *10th* day of July, 2008.

_K. M. Moore_

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record

_____

[25] Breedlove v. Moore, 279 F.3d 952 (11th Cir. 2002); see also 28 U.S.C. § 2254(e)(2).

44