IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 07-22384-CIV-MOORE

LEONARDO FRANQUI,

    Petitioner,

vs.

STATE OF FLORIDA,

    Respondent.
_____/

## ORDER DENYING PETITIONER'S AMENDED MOTION FOR CERTIFICATE OF APPEALABILITY

THIS MATTER came before the Court upon Petitioner's Amended Motion for Certificate of Appealability.

UPON CONSIDERATION of the Motion, the Response, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND**

This Court denied Petitioner Leonardo Franqui's ("Franqui") Motion for Certificate of Appealability in an Order dated December 15, 2008 (dkt # 24). Franqui filed an Amended Motion for Certificate of Appealability with the Eleventh Circuit Court of Appeals on December 2, 2009. On December 7, 2009, the Eleventh Circuit remanded the matter and directed this Court to consider the issues raised in Petitioner's Amended Motion for Certificate of Appealability ("Amended COA Motion").

**II.    STANDARD OF REVIEW**

A prisoner appealing denial of a petition brought under 28 U.S.C. § 2254 must first obtain a Certificate of Appealability ("COA"). Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

A COA shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must raise an issue regarding the denial of a constitutional right which could be debatable among reasonable jurists, or is otherwise reasonably adequate to warrant further proceedings. Miller-El, 537 U.S. at 327, 336–38 (2003). "The petitioner, however, is not required to show he will ultimately succeed on appeal, because when [considering] an application for a COA, 'the question is the debatability of the underlying constitutional claim, not the resolution of the debate.'" Lamarca v. Sec'y, Dep't of Corrs., 568 F.3d 929, 935 (11th Cir. 2009) (internal citation omitted).

### III.  ANALYSIS

#### A.  Atkins Claim

Petitioner seeks a COA on the denial of his claim that his mental retardation proscribes his execution. See Atkins v. Virginia, 536 U.S. 304 (2002). This Court held that this claim was unexhausted and procedurally barred because Franqui failed to timely present the claim within sixty days of October 1, 2004, as required by Florida Rule of Criminal Procedure 3.203. The Florida Supreme Court's Order instructing the Circuit Court to address Franqui's mental retardation claim in a separate Hialeah case (the "Hialeah Case") does not impact this Court's conclusion that his mental retardation claim in this case was unexhausted and procedurally barred. See Jimenez v. Fla. Dep't of Corrs., 481 F.3d 1337, 1342 n.3 (11th Cir. 2007) (stating that motions in state court in the same case that were filed after the federal habeas petition do not affect exhaustion). Therefore, even if the state court now decided to allow Petitioner to file an untimely Atkins motion in the instant case, this Court's conclusion that Petitioner's mental retardation claim was unexhausted would remain undisturbed. Of course, Franqui is free to seek

2

state court review on the merits of his <u>Atkins</u> claim in this case. Thus, none of this Court's findings concerning exhaustion and procedural bar of the mental retardation claim could be debatable among reasonable jurists, or are otherwise reasonably adequate to warrant further proceedings.[1]

This Court also found that the mental retardation claim was without merit because the State put forth evidence at the Hialeah trial that Franqui's Wechsler Test score was 83, thirteen points about the level of mental retardation, and that the only testimony to the contrary was incredible. It is true that the Florida Supreme Court instructed the Circuit Court to conduct an evidentiary hearing on the <u>Atkins</u> issue in the Hialeah case. After conducting the hearing, however, the Circuit Court concluded that the <u>Atkins</u> claim was without merit and the issue is now on appeal. Absent a reversal by the Florida Supreme Court that undermines the facts relied upon by this Court in concluding Franqui's mental retardation claim is without merit, this Court's denial of the claim on the merits could not be debatable among reasonable jurists, and does not warrant further proceedings. Accordingly, Franqui is not entitled to a COA on this claim.

B.    <u>Peremptory Challenges</u>

Petitioner seeks a COA on the denial of his claim that his counsel was ineffective for failing to successfully exercise peremptory challenges against two venire members, Auerlio Diaz ("Diaz") and Adriana Andani ("Andani"). Franqui supports his contention that this issue could be debatable among reasonable jurists by noting that a COA on an "identical" issue was granted

---

[1] This Court reviewed Franqui's <u>Atkins</u> claim on the merits, even after concluding that it was unexhausted and procedurally barred. <u>Franqui</u>, 2008 WL 2747093 at *11. Here, however, this Court's conclusion that reasonable jurists could not debate that Franqui's <u>Atkins</u> claim is unexhausted and procedurally barred ends the analysis as to whether Franqui is entitled to a COA on this issue.

3

to Ricardo Gonzalez ("Gonzalez"), one of Franqui's co-defendants. Gonzalez v. McNeil, No. 08-22909-CIV-DIMITROULEAS (S.D. Fla. October 29, 2009) (dkt # 19). As an initial matter, Gonzalez's claim was a substantive challenge that the trial court erred in denying his peremptory challenges as to Diaz and Andani. Franqui's claim is that his counsel was ineffective for failing to successfully exercise peremptory challenges against Diaz and Andani. Therefore, Franqui's claim differs from Gonzalez's claim because in order to succeed on his claim, Franqui must satisfy the Strickland standard by showing that counsel's performance was deficient and resulted in prejudice that was so serious it deprived him of a fair trial. 466 U.S. 668, 687 (1984).

Recalling that judicial review of defense counsel's performance is highly deferential and courts are to presume that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," this Court finds that given Diaz and Andani's benign answers to the voir dire questions, reasonable jurists would agree that Franqui's counsel was not ineffective for failing to provide plausible race neutral reasons for striking Diaz and Andani. Id. at 690. Moreover, in light of the absence of evidence supporting the contention that the presence of Diaz and Andani on the jury panel negatively impacted the fairness of Franqui's trial, this Court also concludes that reasonable jurists could not find the absence of prejudice to Franqui debatable. Accordingly, Franqui is not entitled to a COA on this claim.

### C. Improper Statements Concerning Aggravating and Mitigating Circumstances

Petitioner seeks a COA on the denial of his claim that the trial judge and prosecutor's erroneous statements concerning the proper weighing of aggravating and mitigating evidence was not harmless error. Franqui supports his contention that this issue could be debatable among

4

reasonable jurists on grounds that: (1) three Justices of the Florida Supreme Court dissented from the Court's holding that the improper statements by the trial judge and prosecutor were harmless, see Franqui v. State of Fla., 804 So. 2d 1185, 1199-1200 (Shaw, J., dissenting, Anstead, Pariente, JJ., concurring); and (2) this Court's reliance on Brown v. Payton, 544 U.S. 133 (2005), fails to resolve all doubt as to whether the contested statements were harmless.

During opening remarks to the initial venire at the penalty phase of Franqui's trial, the judge erroneously stated: "If you believe that the aggravating factors outweighed the mitigating factors, then the law requires that you recommend a sentence of death." Franqui, 803 So. 2d at 1192. The prosecutor also similarly misstated the law during voir dire. Id. On direct appeal, the Florida Supreme Court held that although the statement was erroneous, Franqui was not prejudiced because the trial court's subsequent statement during voir dire accurately stated the law, and the final instructions to the jury were consistent with the standard jury instructions. Id. Moreover, "the trial court gave defense counsel's requested instruction apprising the jury that the weighing process was not a mere counting of the aggravating and mitigation circumstances, but rather a reasoned judgment as to what the appropriate sentence should be in light of the nature of the aggravating and mitigating circumstances found to exist." Id.

In his dissent, Justice Shaw of the Florida Supreme Court stated that the cases relied upon by the majority, namely Henyard v. State, 689 So. 2d 239 (Fla. 1996) and Brooks v. State, 762 So. 2d 922 (Fla. 1999), were distinguishable because the erroneous statements found to be harmless in those cases were made by prosecutors, not by the judge, pointing out that the importance of this distinction had been previously recognized by that Court in Almeida v. State, 748 So. 2d 922 (Fla. 1999). Justice Shaw also noted that in Brooks, the trial court immediately

5

responded to the prosecutor's improper argument by accurately instructing the jury on the law concerning the weighing of aggravating and mitigating evidence, whereas the misstatement of law in Franqui's case "was never cogently addressed or straightforwardly corrected," despite the trial judge's opportunity to do so. Franqui, 804 So. 2d at 1200. Thus, Justice Shaw opined that it was "purely speculative" for the majority to conclude that trial judge's improper statement during voir dire was harmless simply because there was a proper reading of the jury instructions before the jury retired. Id.

Nevertheless, the fact that there was some disagreement among the Florida Supreme Court's Justices is not dispositive as to whether the issue before this Court could be debatable among reasonable jurists. This is so because in finding that the trial judge and prosecutor's improper statements were harmless, the Florida Supreme Court relied on its own case law. In reviewing the issue presented in Franqui's habeas petition, however, this Court was required to determine whether the Florida Supreme Court's conclusion "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This leads to the question of whether this Court's holding, and specifically its reliance on Brown v. Payton, 544 U.S. 133 (2005), is sufficient to dispel all doubt among reasonable jurists that the Florida Supreme Court's finding of harmless error was not contrary to, or did not involve an unreasonable application of, clearly established Federal law.

The issue in Brown involved a prosecutor's erroneous instruction that mitigation evidence at the penalty phase did not include postconviction conduct. The defense objected and the trial judge "admonished the jury that the prosecutor's comments were merely argument, but

[] did not explicitly instruct the jury that the prosecutor's interpretation was incorrect." 544 U.S. at 138. Later, the prosecutor told the jury several times that he did not think they had heard any mitigation evidence, but continued to argue the merits of the mitigation evidence at length. Id. On direct appeal, the California Supreme Court denied the claim. Relying on Boyde v. California, 494 U.S. 370 (1990),[2] the Court held that "in the context of the proceedings there was no reasonable likelihood that [the] jury believed it was required to disregard his mitigating evidence." Id. at 139.

A subsequent petition for writ of habeas corpus was granted by the district court. Id. The Ninth Circuit Court of Appeals, en banc, affirmed, concluding that the reasoning in Boyde rested on the notion that a jury would be unlikely to disregard mitigating character evidence because of a long-held social belief that individuals with disadvantaged backgrounds may be less culpable than others with no such excuse. Id. at 140. By contrast, however, it concluded that a jury would be less likely to consider postconviction evidence of religious conversion and good behavior. Id. In addition, it distinguished Boyde because the judge in Boyde gave a specific instruction correcting the prosecutor's statement, whereas in Brown, the judge only gave a general instruction that the prosecutor's statements were not evidence. Id. at 140-41.

The United States Supreme Court reversed, concluding that the California Supreme Court's holding could not be disturbed under the AEDPA's deferential standard of review. In

---

[2] Boyde involved an erroneous statement by a prosecutor involving the proper scope of mitigation evidence that the jury could consider under California's factor (k) instruction. Brown, 544 U.S. at 141. The Court concluded that factor (k) did not limit consideration of extenuating circumstances exclusively to circumstances of the crime. Id. at 142. In doing so, the Court established a framework for evaluating the effect of erroneous instructions to the jury, specifically "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Boyde, 494 U.S. at 380.

7

doing so, it concluded that the California Supreme Court had not acted unreasonably in declining to distinguish between precrime and postcrime evidence. The Court also held that "the California Supreme Court's conclusion that the jury was not reasonably likely to have accepted the prosecutor's [erroneous statement of the law] was an application of Boyde to similar but not identical facts." Id. at 143. Thus, "[e]ven on the assumption that its conclusion was incorrect, it was not unreasonable, and is therefore just the type of decision that AEDPA shields on habeas review." Id.

The Florida Supreme Court's denial of Franqui's claim is not a conclusion that is opposite to a conclusion reached by the United States Supreme Court on a question of law. Nor is the issue here materially indistinguishable factually from a case already decided by the United States Supreme Court. Thus, the only ground upon which reasonable jurists could debate the Florida Supreme Court's conclusion is that its holding was unreasonable. Even if the holding was wrong, Franqui is only entitled to a COA on this issue if reasonable jurists could debate that the Court's holding was not only wrong, but unreasonably so.

As illustrated in Brown and Boyde, the test of whether an erroneous instruction prevented jurors from adequately considering a defendant's mitigation evidence turns on "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Boyde, 494 U.S. at 380. Moreover, Brown and Boyde mandate that "the whole context of the trial be considered." Id. at 144. Here, the trial judge and prosecutor initially made erroneous statements of law during voir dire, but the trial judge corrected the erroneous instructions during the voir dire, and provided an accurate jury instruction again at the close of the penalty phase. It is true that Brown and Boyde did not

involve statements made by the trial judge. However, the Florida Supreme Court's finding that in the context of Franqui's trial there was no resulting prejudice is not an issue debatable among reasonable jurists because it is a reasonable application of the principles delineated in <u>Brown</u> and <u>Boyde</u>. Therefore, even assuming the Florida Supreme Court's conclusion was wrong, the reasonableness of its holding on this matter is nevertheless beyond debate by reasonable jurists. Accordingly, Franqui is not entitled to a COA on this claim.

> D. Exclusion of the Fact that Franqui did not Fire the Fatal Shot from Consideration as a Mitigating Circumstance

Petitioner seeks a COA on the denial of his claim that the trial judge erred in failing to include the fact that Franqui did not fire the fatal shot as a mitigating circumstance. Franqui contends that in light of the United States Supreme Court's holding in <u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982), reasonable jurists could disagree with this Court's denial of his claim. In <u>Eddings</u>, the Court found an Eighth Amendment violation where the trial judge refused to consider the defendant's violent family history as a mitigating circumstance. <u>Id.</u> at 113. Citing the rule laid down in <u>Lockett v. Ohio</u>, 438 U.S. 586 (1978), the <u>Eddings</u> Court stated: "[W]e conclude that the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." <u>Eddings</u>, 455 U.S. at 110 (quoting <u>Lockett</u>, 438 U.S. at 604) (emphasis in original).

Thus, given that "capital punishment be imposed fairly, and with reasonable consistency, or not at all," a constitutionally indispensable part of the process is "that there be taken into account the circumstances of the offense together with the character and propensities of the

9

offender." Id. at 112 (quoting Pennsylvania v. Ashe, 302 U.S. 51, 58 (1937)); see Tuilaepa v. California, 512 U.S. 967, 976 (1994) (holding that challenge to portion of California's death penalty regime requiring jury to consider circumstances of the crime was meritless because it was at odds with settled principles of capital jurisprudence that circumstances of the crime must be considered). Moreover, "[j]ust as a State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law,* any relevant mitigating evidence." Id. at 133-14 (emphasis in original).

In Florida, "[e]vidence is mitigating if, in fairness or in the totality of the defendant's life or character, it may be considered as extenuating or reducing the degree of moral culpability for the crime committed." Spann v. State, 857 So. 2d 845, 858 (Fla. 2003). When reviewing a trial court's conclusion as to mitigating circumstances, the Florida Supreme Court's standard is as follows: "(1) whether a particular circumstance is truly mitigating in nature is a question of law and subject to de novo review . . . ; (2) whether a mitigating circumstance had been established by the evidence in a given case is a question of fact and subject to the competent, substantial evidence standard; and (3) the weight assigned to a mitigating circumstance is within the trial court's discretion and subject to the abuse of discretion standard." Id. at 858-59. Of these three considerations, the second and third only apply if a circumstance is deemed to be mitigating in nature as a matter of law.

In evaluating Franqui's claim that his status as a non-fatal shooter should be weighed as a mitigating factor, the trial court stated:

> The defense argues that the fact that the defendant did not fire the fatal shot should be considered as a non-statutory mitigating circumstance. The evidence is uncontroverted that Franqui did not fire the fatal bullet. This fact, then, has been reasonably established. However, whether this proven fact is in any way a mitigating

10

> circumstance is [a] different matter. This defendant was personally present during two prior robbery attempts during which he and/or his accomplices opened fire upon intended victims without hesitation. On December 6, 1991, this defendant personally killed another person during a robbery attempt. On January 3, 1992, with full knowledge that a uniformed police officer guarded the tellers, Franqui leapt out of his vehicle, pointed the gun and fired a shot which struck Officer Bauer in the hip. This injury caused the officer to fall towards Gonzalez, who then delivered the fatal blow. Franqui was prepared to use lethal force to eliminate any impediment to his robbery plan. He did not hesitate to [] actually use such force. This defendant's willingness to open fire on Officer Bauer sealed Officer Bauer's fate on that sad day and this defendant is as responsible for his death as the person who fired to fatal bullet. Because his bullet luckily did not strike any vital organ does not equate to a mitigating circumstance. The court is not reasonably convinced that this mitigating circumstance has been established.

Franqui Sentencing Order at 16, dated September 18, 1998.

> In reviewing the trial court's holding the Florida Supreme Court stated:
>
> Franqui also contends that the trial court failed to find and weigh as a mitigating circumstance the fact that he did not fire the fatal bullet. Although we have indicated that the fact that a defendant did not fire the fatal shot may be a mitigating factor, whether it actually is depends on the particular facts of the case. Here, it is uncontradicted that Franqui shot at Officer Bauer, striking him in the hip. Although this wound alone was not fatal, the medical examiner testified that his findings were consistent with the conclusion that Officer Bauer was first shot in the hip by a bullet which ricocheted off the pillar he took cover behind, causing him to fall forward and be struck by the fatal bullet fired by Gonzalez. Under the particular facts of this case, we find that the trial court did not err in considering, but ultimately rejecting, the fact that Franqui did not fire the fatal bullet as a mitigating circumstance.

Franqui, 804, So. 2d at 1197 (internal footnote omitted). In denying Franqui's habeas petition, this Court concluded that "[t]he Florida courts satisfied their constitutional burden of considering the fact that Franqui did not fire the fatal bullet; consequently, their actions were not contrary to, or an unreasonable application of, clearly established federal law." Franqui, 2008 WL 2747093 at *22.

The trial court articulated Franqui's claim as one in which Franqui claimed that his status as a non-fatal shooter should be considered as a mitigating circumstance. Franqui Sentencing

11

Order at 16. The substance of the trial court's analysis, and its consideration of the factual circumstances of the shooting, indicates that it weighed Franqui's status as a non-fatal shooter and concluded that it was entitled to no weight as a mitigating circumstance. The trial court's language, however, could also be construed as giving Franqui's status as a non-fatal shooter "no weight by excluding such evidence from their consideration," the result of which would be an Eighth Amendment violation pursuant to Lockett and Eddings. Eddings, 455 U.S. at 114. First, the trial court rejected Franqui's claim, which the trial court construed as a claim that he was entitled to have his status as a non-fatal shooter considered as a non-statutory mitigating circumstance. In doing so, the trial court ultimately concluded that "this factor does not equate to a mitigating circumstance" and "the court is not reasonably convinced that this mitigating circumstance has been established." This language, in combination with the trial court's articulation of Franqui's claim, raises the specter that the trial court may have refused to consider his status as a non-fatal shooter as constituting a mitigating circumstance, as opposed to weighing this circumstance of the crime as a mitigating factor and concluding that it was entitled to no weight. Thus, based on the trial court's Sentencing Order, a reasonable jurist could conclude that the trial court failed to consider Franqui's status as a non-fatal shooter as a mitigating circumstance and include that within the weighing of aggravating and mitigating circumstances.[3]

Likewise, the Florida Supreme Court construed Franqui's claim as asserting a right to have his status as a non-fatal shooter considered as a mitigating circumstance. Upon reviewing

---

[3] Clemons v. Mississippi, 494 U.S. 738 (1990), and its progeny, including Sochor v. Florida, 504 U.S. 527 (1992), stand for the distinct proposition that when a court improperly weighs an invalid aggravating circumstance, as opposed to improperly excluding a mitigating circumstance, there is an Eighth Amendment violation unless the state appellate court reweighs the aggravating and mitigating circumstances without the invalid aggravating circumstance or determines that weighing the invalid factor was harmless error.

12

the trial court's holding, the Court considered the facts of the shooting and concluded that the trial court was correct in concluded that Franqui's status as a non-fatal shooter was not a mitigating factor. Again, the substance of the analysis indicates that the Court concluded that the trial court considered the circumstances of the crime and concluded that they were entitled to no weight. The Court's language, however, is not clear as to whether it concluded that the trial court properly weighed Franqui's status as a non-shooter and attributed no mitigating value to it, or found that the trial court properly excluded this fact from the scope of mitigating evidence and therefore never weighed it. Indeed, the Court's conclusion that "[u]nder the particular facts of this case, we find that the trial court did not err in considering, but ultimately rejecting, the fact that Franqui did not fire the fatal bullet as a mitigating circumstance," could permit a reasonable jurist to reach either conclusion. Franqui, 804 So. 2d at 1198.

      Even assuming, however, that the trial court failed to consider and weigh Franqui's status as a non-fatal shooter, had it done so, it is evident from the Sentencing Order that the outcome would have undoubtedly been the same. This raises the question as to whether the trial court's alleged violation of Eddings was harmless error. The Supreme Court did not conduct a harmless error analysis in Eddings and has not found harmless error in any case since where the rule in Eddings was violated. The Court, however, has clearly indicated that harmless error is applicable to a violation of the rule in Eddings. In Hitchcock v. Dugger, 481 U.S. 393, (1987), the Court granted habeas relief, noting that the government made no attempt to argue that the sentencer's improper refusal to consider non-statutory mitigating factors was harmless error. 482 U.S. at 398-99. The Court held that "[i]n the absence of such a showing [of harmless error] our cases hold that the exclusion of mitigating evidence of the sort at issue here renders the death sentence

invalid. Id.; see Skipper v. South Carolina, 476 U.S. 1, 7-8 (1986) (declining to hold that improperly excluded mitigating evidence was cumulative and its exclusion harmless error).

When assessing whether a trial court's improper refusal to consider mitigating evidence in a capital case was harmless error, a district court must determine whether the error "'had a substantial injurious effect or influence in determining'" the defendant's death sentence. Smith v. Singletary, 61 F.3d 815, 818 (1995) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946))). Assuming, arguendo, that the trial court violated the rule in Eddings, this Court harbors no doubts that the trial court's refusal to consider Franqui's status as a non-fatal shooter as a mitigating circumstance did not have a substantial injurious effect or influence in determining Franqui's death sentence. When addressing the fact that Franqui did not fire the fatal shot, the trial judge stated that by shooting at Officer Bauer, opening fire during previous robberies, and personally killing another person in a prior robbery attempt, Franqui had demonstrated that he "was prepared to use lethal force to eliminate any impediment to his robbery plan." Franqui Sentencing Order at 16, dated September 18, 1998. Thus, the trial judge concluded that Franqui's status as a non-fatal shooter "does not equate to a mitigating circumstance." Id. Again, even assuming that the trial court failed to weigh Franqui's status as a non-fatal shooter as a mitigating circumstance, the trial judge left no doubt that had he done so, he would not have assigned this fact any weight sufficient to change his conclusion that a sentence of death was appropriate. Thus, even if the trial judge erred, this Court finds that reasonable jurists would agree that the error was harmless

14

under the Brecht standard. Accordingly, Franqui is not entitled to a COA on this claim.[4]

### E. Ineffective Assistance of Counsel for Failing to Present Evidence Concerning the Voluntariness of His Confession During the Penalty Phase

Petitioner seeks a COA on the denial of his claim that his counsel was ineffective for failing to present evidence concerning the voluntariness of his confession during resentencing. In support of this claim, he relies on Crane v. Kentucky, 476 U.S. 683 (1986).[5] Crane, however, does not control this case because it addressed a defendant's ability to present evidence during the guilt phase in a manner that provided "a meaningful opportunity to present a complete defense." 476 U.S. at 690 (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). Rather, this case is controlled by Oregon v. Guzek, 546 U.S. 517 (2006). In Guzek, the Supreme Court of the United States held that a defendant does not have a constitutional right to present evidence at the penalty phase that only serves to cast residual doubt on the conviction. Id. at 525. In other words, although a defendant is entitled to present mitigating evidence concerning how the crime occurred, see Eddings, 455 U.S. at 110, a defendant is not entitled to present evidence that merely casts doubt on whether he committed the crime. Guzek, 546 U.S. at 524.

The claim for which Franqui seeks a COA turns in part on whether the evidence his

---

[4] Respondent contends that the issue of the exclusion of Franqui's status as a non-fatal shooter from consideration as a mitigating circumstance was only properly raised as an ineffective assistance of counsel claim in the underlying petition. In his Amended COA Motion Franqui only raises the substantive claim, which this Court resolved when ruling on the underlying petition. The Eleventh Circuit's Limited Remand instructs this Court to consider only the limited issues raised in the Amended COA Motion. Thus, it is only this Court's ruling on the substantive claim on which a COA is granted.

[5] In Crane, the United States Supreme Court held that refusing to allow a defendant to present evidence concerning the circumstances of his interrogation and confession in his case-in-chief, after the trial judge had ruled that the confession was voluntary, deprived the defendant of his Sixth and Fourteenth Amendment rights. 476 U.S. at 691. In doing so, it held that the Kentucky Supreme Court ignored that fact that the circumstances of an interrogation and confession bear not only on voluntariness, a legal issue, but credibility, a factual issue relevant to the defendant's guilt or innocence. Id. at 688.

15

counsel failed to present would do more than merely cast residual doubt on his conviction, and whether the failure to do so was tantamount to a deprivation of counsel. If so, Franqui was still required to demonstrate that the error prejudiced him in a way that deprived him of a fair trial. As an initial matter, the fact that Franqui's counsel did not attempt to introduce evidence concerning the voluntariness of his confession makes the issue of how the evidence would have been used speculative. Nevertheless, even assuming that such evidence could have served a proper purpose beyond casting doubt on the conviction, reasonable jurists could not debate that his counsel's failure do so was not a defect of sufficient gravity to meet <u>Strickland</u>'s first prong.

Given the uncontroverted evidence that Franqui shot Officer Bauer, who then fell from a covered position and was shot and killed by Gonzalez, any evidence pertaining to the voluntariness of the confession would contribute little to how the crime was committed. Moreover, in his Amended COA Motion, Franqui made no mention of how this evidence could have been used properly or why his counsel's failure to present it was a defect of a constitutional magnitude. Thus, the primary purpose of this evidence would have been to cast residual doubt on his conviction. In addition to the paucity of argument or evidence as to how the voluntariness of his confession would be relevant at the penalty phase, Franqui's Amended COA Motion does not explain how he was prejudiced by his counsel's failure to raise this issue, and this Court is unable to ascertain how such prejudice may have occurred. Thus, this Court finds that reasonable jurists could not debate that the Florida Supreme Court accurately concluded that Franqui's counsel was not ineffective for failing to present such evidence. Therefore, Franqui is not entitled to a COA on this claim.

## IV. CONCLUSION

Accordingly, it is

ORDERED AND ADJUDGED that Petitioner's Amended Motion for a Certificate of Appealability is DENIED. It is further

ORDERED AND ADJUDGED that this Court's Order dated November 18, 2009 (dkt # 37), is VACATED.

DONE AND ORDERED in Chambers at Miami, Florida, this 28th day of January, 2010.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record